# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 17 2018, 9:19 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT B.H.

Harold E. Amstutz
Lafayette, Indiana

ATTORNEY FOR APPELLANT D.A.

Cynthia Phillips Smith
Law Office of Cynthia P. Smith
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Abigail R. Recker
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Termination of the Parent-Child Relationship of: T.H. (Minor Child), and B.H. (Father) and D.A. (Mother), *Appellants-Respondents,* v. | July 17, 2018<br><br>Court of Appeals Case No. 18A-JT-423<br><br>Appeal from the Tippecanoe Superior Court<br><br>The Honorable Faith A. Graham, Judge<br><br>Trial Court Cause No. 79D03-1707-JT-70 |

Indiana Department of Child
Services,

*Appellee-Petitioner.*

**Bradford, Judge.**

# Case Summary

B.H. ("Father") and D.A. ("Mother") (collectively, "Parents") appeal the juvenile court's order terminating their parental rights to T.H. ("the Child"). On October 25, 2016, the Indiana Department of Child Services ("DCS") became involved in the Child's life after Mother was arrested on drug-related charges. The Child was subsequently determined to be a child in need of services ("CHINS") and Parents were ordered to complete certain services. They failed to successfully do so.

DCS filed petitions seeking the termination of Parents' parental rights to the Child on July 27, 2017. Following an evidentiary hearing, the juvenile court issued an order granting DCS's petitions. On appeal, Parents contend that DCS did not provide sufficient evidence to support the termination of their parental rights. We affirm.

# Facts and Procedural History

[3] The Child was born on March 14, 2016. He was removed from Mother's home on October 25, 2016, after she was arrested on drug-related charges and was placed with a relative. Two days later, on October 27, 2016, DCS filed a petition alleging that the Child was a CHINS. At this time, Father's identity was unknown. The petition alleged that (1) Mother was arrested after marijuana and heroin were recovered from her home; (2) when authorities arrived at the home, the Child "was strapped into his stroller which was sitting close to a table containing a pile of marijuana and a half-smoked blunt"; and (3) there were no other adult caregivers available at the time of Mother's arrest. Ex. Vol. I, p. 13. The CHINS petition was amended on November 2, 2016, to include Father. Following an evidentiary hearing, the juvenile court found the Child to be a CHINS and noted that Father was not available to care for the Child due to his incarceration.

[4] The juvenile court conducted a dispositional hearing after which Mother was ordered to (1) complete a substance-abuse and mental-health assessment and follow all recommendations, (2) participate in home-based services, (3) remain drug-and-alcohol-free for the duration of the case, (4) participate in parenting time, and (5) participate in random drug screening. Father was ordered to (1) complete an updated substance-abuse assessment and follow all recommendations, (2) participate in home-based services, (3) submit to random drug screening, (4) remain drug-and-alcohol-free, and (5) participate in

parenting time. Neither Mother nor Father successfully complete the ordered services.

On July 27, 2017, DCS filed petitions seeking the termination of Parents' parental rights to the Child. The juvenile court conducted an evidentiary hearing on DCS's petitions on October 18, 2017. During the evidentiary hearing, DCS presented evidence indicating that (1) Mother displayed a pattern of combative and threatening behavior; (2) Mother lacks the ability to make healthy choices for both herself and the Child; (3) although Mother had made some progress, concerns remain about whether this progress would last as she has not displayed the motivation or commitment to making lasting positive changes; (4) Mother tested positive for drugs on at least fifteen separate occasions; (5) Father largely failed to participate in service and has tested positive for drugs; (6) termination of the Parents' parental rights was in the Child's best interests; and (7) its plan was for the Child to be adopted. For their part, Parents argued that they loved the Child and had begun to take the steps necessary to improve their situations with the hopes of one day being in the position to provide adequate care for the Child. On January 23, 2018, the juvenile court issued an order terminating Parents' parental rights to the Child.

# Discussion and Decision

The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their child. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 145 (Ind. 2005).

Although parental rights are of a constitutional dimension, the law allows for the termination of those rights when parents are unable or unwilling to meet their parental responsibilities. *In re T.F.*, 743 N.E.2d 766, 773 (Ind. Ct. App. 2001), *trans. denied*. Parental rights, therefore, are not absolute and must be subordinated to the best interests of the child. *Id.* Termination of parental rights is proper where the child's emotional and physical development is threatened. *Id.* The juvenile court need not wait until the child is irreversibly harmed such that his physical, mental, and social development is permanently impaired before terminating the parent-child relationship. *Id.*

[7] Parents contend that the evidence is insufficient to sustain the termination of their parental rights to the Child. In reviewing termination proceedings on appeal, this court will not reweigh the evidence or assess the credibility of the witnesses. *In re Involuntary Termination of Parental Rights of S.P.H.*, 806 N.E.2d 874, 879 (Ind. Ct. App. 2004). We only consider the evidence that supports the juvenile court's decision and reasonable inferences drawn therefrom. *Id.* Where, as here, the juvenile court includes findings of fact and conclusions thereon in its order terminating parental rights, our standard of review is two-tiered. *Id.* First, we must determine whether the evidence supports the findings, and, second, whether the findings support the legal conclusions. *Id.*

[8] In deference to the juvenile court's unique position to assess the evidence, we set aside the juvenile court's findings and judgment terminating a parent-child relationship only if they are clearly erroneous. *Id.* A finding of fact is clearly erroneous when there are no facts or inferences drawn therefrom to support it.

*Id.*  A judgment is clearly erroneous only if the legal conclusions made by the juvenile court are not supported by its findings of fact, or the conclusions do not support the judgment.  *Id.*

Parents claim that DCS failed to present sufficient evidence to prove by clear and convincing evidence that:

> (B)  that one (1) of the following is true:
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied[; or]
>> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.…
> (C)  termination is in the best interests of the child[.]

Ind. Code § 31-35-2-4(b)(2).[1]  Because Parents have filed separate appellate briefs and have addressed their claims separately, we will do the same.

# I.  Mother

## A.  Indiana Code Section 31-35-2-4(b)(2)(B)

It is well-settled that because Indiana Code section 31-35-2-4(b)(2)(B) is written in the disjunctive, the juvenile court need only find either that (1) the conditions resulting in removal from or continued placement outside the parents' home

---

[1]  Neither Mother nor Father dispute that DCS presented sufficient evidence to support the first and fourth elements set forth in Indiana Code section 31-35-2-4(b)(2).

will not be remedied, (2) the continuation of the parent-child relationship poses a threat to the child, or (3) the child has been adjudicated CHINS on two separate occasions. *See In re C.C.*, 788 N.E.2d 847, 854 (Ind. Ct. App. 2003), *trans. denied*. Therefore, where the juvenile court determines that one of the above-mentioned factors has been proven and there is sufficient evidence in the record supporting the juvenile court's determination, it is not necessary for DCS to prove, or for the juvenile court to find, either of the other two factors listed in Indiana Code section 31-34-2-4(b)(2)(B). *See In re S.P.H.*, 806 N.E.2d at 882.

[12] In this case, the juvenile court concluded as follows:

> There is a reasonable probability the conditions that resulted in removal of the child from the home or the reasons for continued placement outside the home will not be remedied. Neither parent has demonstrated an ability or willingness to make lasting changes from past behaviors. There is no reasonable probability that either parent will be able to maintain stability to care and provide adequately for the child.

Mother's App. Vol. II, p. 10. In reaching this conclusion, the juvenile court found that Mother failed to refrain from using drugs, testing positive for drugs on fifteen occasions and failing to submit to other drug screens as requested. The juvenile court also found that Mother (1) has displayed a pattern of and continued to engage in delinquent and criminal behavior; (2) demonstrated hostile and threatening behavior toward service provides, even in the Child's presence; and (3) refused to fully engage in services. Mother does not challenge the accuracy of any of the juvenile court's findings, but rather points to evidence

that she claims demonstrates that she had begun to take the steps necessary to improve her situation.

[13] The juvenile court acknowledged Mother's recent progress, but found that Mother had "since made reckless decisions demonstrating an inability to sustain such progress long-term." Mother's App. Vol. II, p. 9. In this vein, Laura Houze, a therapist who worked with Mother, expressed concerns about whether Mother could sustain her recent progress because Mother had not displayed "a motivation or commitment to making positive changes" or taken ownership of the actions that led to the Child's removal from her care. Tr. Vol. II, p. 67. In addition, Mother continued to engage in angry outbursts aimed at those attempting to help her, including her attorney, up until the start of the evidentiary hearing. Mother has failed to prove that she can maintain stable employment or housing. She has also indicated that she sees nothing wrong with the use of marijuana. Mother's pattern of unwillingness to address the highlighted issues and cooperate with those providing services, in conjunction with her failure to exhibit an ability to make lasting progress, is sufficient to support the juvenile court's finding that the conditions which led to the Child's removal from her care are not likely to change. *See Lang v. Stark Cty. Office of Family & Children*, 861 N.E.2d 366, 372 (Ind. Ct. App. 2007) (providing that "A pattern of unwillingness to deal with parenting problems and to cooperate with those providing social services, in conjunction with unchanged conditions, support a finding that there exists no reasonable probability that the conditions will change"). Mother's claim to the contrary merely amounts to an invitation

for this court to reweigh the evidence, which we will not do. *See In re S.P.H.*, 806 N.E.2d at 879.

## B. Indiana Code Section 31-35-2-4(B)(2)(C)

[14] We are mindful that in considering whether termination of parental rights is in the best interests of a child, the juvenile court is required to look beyond the factors identified by DCS and look to the totality of the evidence. *McBride*, 798 N.E.2d at 203. In doing so, the juvenile court must subordinate the interests of the parent to those of the child involved. *Id.* Furthermore, this court has previously determined that the testimony of the case worker, guardian ad litem ("GAL"), or a court appointed special advocate ("CASA") regarding the child's need for permanency supports a finding that termination is in the child's best interests. *Id.*; *see also Matter of M.B.*, 666 N.E.2d 73, 79 (Ind. Ct. App. 1996), *trans. denied*.

[15] DCS family case manager ("FCM") Christopher LaMar testified that termination of Parents' parental rights was in the best interests of the Child. FCM LaMar based his opinion on Mother's "non-compliance throughout most of the case, um, and [Father's] lack of engagement with services." Tr. Vol. II, p. 156. He noted that he was not convinced that Mother understood how to meet the Child's needs and that he did not believe that the Child "could safely be returned to the primary care, custody, and control of either parent." Tr. Vol. II, p. 156. Likewise, Suzanne Magnante, the CASA assigned to the Child's case, testified that she believed that termination of Parents' parental rights was

in the Child's best interests.  This testimony is sufficient to sustain the juvenile court's finding to that effect.

## II.  Father

### A.  Indiana Code Section 31-35-2-4(b)(2)(B)

[16]  Father claims that the evidence is insufficient to sustain the juvenile court's determination that the conditions resulting in the Child's removal from the home would not be remedied.  In making this claim, Father presents no argument relating to himself.  Instead, he relies solely on evidence relating to Mother.  We concluded above that, with respect to Mother, the evidence demonstrated that it was not likely that the conditions resulting in the Child's removal would be remedied.  Because Father relies only on these same facts, we reach the same conclusion, *i.e.*, that the evidence is sufficient to sustain the juvenile court's finding that the condition will not be remedied.[2]

### B.  Indiana Code Section 31-35-2-4(B)(2)(C)

[17]  Father also claims that the evidence is insufficient to sustain the juvenile court's determination that termination of his parental rights was in the Child's best interests.  In making this claim, Father argues that he was the "forgotten parent" and suggests that the juvenile court's determination was based solely on

---

[2]  Again, because Indiana Code section 31-35-2-4(b)(2)(B) is written in the disjunctive, we need not consider whether the evidence is sufficient to sustain the juvenile court's finding regarding whether the continued relationship poses a threat to the Child's well-being.  *See In re S.P.H.*, 806 N.E.2d at 882.

testimony relating to Mother. Father's Br. p. 14. Contrary to Father's suggestion, however, both FCM LaMar and the Child's CASA testified that termination of the Parents' parental rights was in the Child's best interests. Their opinions were given in relation to both Mother and Father and were not limited to one parent. As we concluded above, their testimony was sufficient to prove that the termination of Father's parental rights was in the Child's best interests.

# Conclusion

[18] In sum, we conclude that neither Mother nor Father have established that the evidence presented by DCS was insufficient to sustain the juvenile court's order terminating their parental rights to the Child. Accordingly, we affirm.

[19] The judgment of the trial court is affirmed.

Baker, J., and Kirsch, J., concur.